## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 05-48260** |
| **JIMMY JOHN GIROUARD,** | § | **CHAPTER 13** |
| | § | |
| **DEBTOR.** | § | |

## MEMORANDUM OPINION
## ON THE STATE OF TEXAS' OBJECTION TO CONFIRMATION

### I. INTRODUCTION

Jimmy John Girouard (the Debtor) filed a Chapter 13 bankruptcy petition, and his pending

plan proposes to pay approximately 8% of the debt of $50,000 that he owes to the State of Texas (the

State). The State has objected to the confirmation of the Debtor's plan, asserting that it was filed in

bad faith, in violation of 11 U.S.C. § 1325(a)(3). The State has based its assertion of bad faith in part

on the Debtor's recent Chapter 7 bankruptcy case, which did not discharge the debt to the State.

Additional factors cited by the State in support of its objection include the percentage of the debt to

be repaid to the State under the proposed plan and the potential for weakening of the enforcement

of the State's power. The purpose of this Memorandum Opinion is to address these issues.

### II. FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as admitted in the briefs

and filings, in chronological order, are as follows:

1.    On June 1, 2004, the Debtor signed a Final Judgment and Agreed Permanent Injunction (the Settlement) with the State. [Docket No. 16, Exhibit A at pages 1 and 12 ].[1] The Settlement ordered the Debtor to pay $50,000.00 to the Office of the Attorney General as civil penalties, $8,000.00 to the Attorney General for attorney's fees and investigative costs, and $5,000.00 to the Texas Department of Health for investigative costs. [Docket No. 16, Exhibit A, page 10].

2.    In the Settlement, the Debtor agreed that his indebtedness to the State would be a nondischargeable debt in any subsequent bankruptcy case filed under either Chapter 7 or Chapter 11. [Docket No. 16, Exhibit A, page 2].

3.    In the Settlement, the Debtor stipulated that he would not contest any attempts by the State to have such debt declared nondischargeable in accordance with 11 U.S.C. § 523(a)(7). [Docket No. 16, Exhibit A, page 2].

4.    In the Settlement, the Debtor admitted to no violations of the Texas Food, Drug and Cosmetic Act or the Texas Deceptive Trade Practices, or any other law. [Docket No. 16, Exhibit A, page 1].

5.    The Debtor filed for relief pursuant to Chapter 7 of the Bankruptcy Code on February 17, 2005. [Case No. 05-32424, Docket No. 1].

6.    The Debtor listed the $63,000.00 debt he owed to the State on his Schedule F, aggregating the $50,000.00, $8,000.00, and $5,000.00 debts into one. [Case No. 05-32424, Docket No. 1].

---

[1]In this Memorandum Opinion, all references to Docket Numbers relate to the Docket Sheet in Case Number 05-48260, unless another Case Number is specifically identified.

7.   The Debtor received a discharge in his Chapter 7 case on May 24, 2005. [Docket No. 19, ¶ 3; Case No. 05-32424, Docket No. 17]. The $8,000.00 and $5,000.00 investigative cost debts were discharged, but the $50,000.00 civil fine was not discharged. [Docket Nos. 1 and 19, ¶ 4].

8.   Both the Debtor and the State stipulate that the $50,000.00 debt for civil fines is not dischargeable in a Chapter 7 case under 11 U.S.C. § 523(a)(7). [Docket Nos. 19 and 16, ¶ 4].

9.   The Debtor filed for relief under Chapter 13 on October 10, 2005. [Docket No. 1]. His initial plan proposed to pay his mortgage directly to the home lender and pay the remainder of his surplus income to the Chapter 13 Trustee for distribution to his remaining debts. [Docket No. 2].

10.  The Debtor included two unsecured debts on his Chapter 13 petition: $50,000.00 owed to the State and $864.00 owed to MD Anderson Cancer Center. [Docket No. 1]. The total value of the Debtor's non-exempt property is $100.00, which reflects two bank accounts each containing a balance of $50.00. [Docket No. 1]. In his initial Schedule I and Schedule J, he listed total monthly income as $3,652.00 (later updated) and his total monthly expenses as $3,619.00. [Docket No. 1].

11.  Based upon the figures in his initial Schedule I and Schedule J, the Debtor's monthly surplus equals $33.00, which, once the Trustee's 10% fee is paid, leaves $29.70 per month to pay towards the plan. For the 36-month plan, the Debtor's contribution totals $1,069.20. [Docket No. 1].

12.     On February 16, 2006, the Chapter 13 Trustee filed an Objection to the Debtor's initial plan on the grounds that the Debtor was proposing to pay an insufficient amount to unsecured creditors. [Docket No. 14].

13.     On February 22, 2006, the State also filed an Objection to Confirmation of the Debtor's initial plan. [Docket No. 16]. The State objected to the plan because it proposed to pay only approximately 2% of the $50,000.00 owed to the State and sought a discharge for the other 98% that is not paid. [Docket No. 16].

14.     On March 1, 2006, the Debtor filed a First Amended Schedule I, which reports a monthly income of $3,752.00. [Docket No. 17]. The additional income is an increase in rent proceeds the Debtor will receive from his daughter. The Debtor's monthly surplus now equals $133.00, which, once the Trustee's 10% fee is paid, leaves $119.70 per month for distribution to creditors. For the 36-month plan, the Debtor's contribution totals $4,309.20 (i.e., $119.70 x 36 months = $4,309.20).

15.     On March 1, 2006, the Debtor filed his First Amended Plan to reflect that the monthly surplus would be $133.00, as opposed to the monthly surplus under the initial plan of $33.00. [Docket No. 18].

16.     The Debtor's aggregate contribution of $4,309.20 constitutes approximately 8.6% of the $50,000.00 debt owed to the State.

17.     On March 3, 2006, the State and the Debtor filed a Stipulation of Facts relating to the Objection [Docket No. 19]. Additionally, on this same date, the State filed a Supplemental Brief in Support of its Objection. [Docket No. 20].

18.  Although the Objection to Confirmation was filed at the time when the Debtor was proposing to pay approximately 2% of the $50,000.00 owed to the State, the fact that the Debtor has amended his plan to pay approximately 8.6% of the $50,000.00 claim has not changed the State's position.  As set forth in the Supplemental Brief, the State still opposes confirmation on the grounds that the 8.6% dividend to unsecured creditors is too low.  [Docket No. 19, ¶ 13].  Therefore, the Objection to Confirmation is as applicable to the Debtor's First Amended Plan as it is to the Debtor's initial plan.[2]

19.  The State's attorney has stipulated that the only legal issue is whether the First Amended Plan is proposed in good faith.

20.  In the wake of the Debtor amending his initial plan to increase the monthly surplus by $100.00 to $133.00, the Trustee has changed his position: he now recommends confirmation of the First Amended Plan.

### III.  CONCLUSIONS OF LAW

**A.  Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 (a) and 157(b)(2)(L).  This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  Venue is proper pursuant to 28 U.S.C. §1408(1).

**B.  The Debtor's Plan Is Proposed in Good Faith**

Chapter 13 of the Bankruptcy Code requires a debtor to propose a plan, and the plan can only be confirmed if proposed in good faith. 11 U.S.C. § 1325(a)(3). The Bankruptcy Code provides no

---

[2]The Debtor's First Amended Plan is hereinafter referred to as "the Plan" or the "First Amended Plan."

precise standard for what constitutes good faith. Courts have used a "totality of the circumstances" test to determine if a plan has been filed in good faith. *In re Chaffin*, 836 F.2d 215, 217 (5th Cir. 1988); *In re Lapin*, 302 B.R. 184, 190-91 (Bankr. S.D. Tex. 2003). When weighing the circumstances to make this determination, a court may consider the following factors (among others):

(1)   The amount of the proposed payments and the amount of the debtor's surplus;

(2)   The debtor's employment history, ability to earn and likelihood of future increases in income;

(3)   The probable or expected duration of the plan;

(4)   The accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5)   The extent of the preferential treatment between classes of creditors;

(6)   The extent to which secured claims are modified;

(7)   The type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8)   The existence of special circumstances such as inordinate medical expenses;

(9)   The frequency with which the debtor has sought relief under the Bankruptcy Code;

(10)  The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11)  The burden which the plan's administration would place upon the trustee.

*In re Bush*, 120 B.R. 403, 407-08 (Bankr. E.D. Tex. 1990); *In re Estus*, 695 F.2d 311, 317 (8th Cir. 1982). Courts should give equal weight to all applicable factors rather than focusing on one specific determinant. *In re McLaughlin*, 217 B.R. 772, 775-76 (Bankr. W.D. Tex. 1998); *In re Vasquez*, 261 B.R. 654, 658 (Bankr. N.D. Tex. 2001). The burden to establish good faith lies with the debtor. *In re Dickerson*, 232 B.R. 894, 897 (Bankr. E.D. Tex. 1999).

In the case at bar, the Court finds that more circumstances weigh in favor of the Debtor's good faith. The Debtor is proposing to contribute the entirety of his surplus income to the Plan. His

6

payments will constitute 8.62% of the debt owed to the State, a percentage which is higher than the percentage payout to unsecured creditors in many of the plans confirmed in this Court.[3] There is no evidence that the Debtor has misled the Court or attempted to hide assets or income. Given the Debtor's affliction with cancer, his future potential income earning capacity is probably not going to exceed the income that he is presently generating.[4] The three-year duration of the Plan shows the willingness of the Debtor to repay as much of the debt as he can. In response to the U.S. Trustee's request for a larger payment, the Debtor agreed to charge higher rent to his daughter to increase his income. As a result of this change, the Trustee recommends confirmation of the Plan, a recommendation which this Court considers important.

The Court acknowledges that some factors weigh against a finding of good faith. The debt at issue was nondischargeable under Chapter 7. The Debtor filed this Chapter 13 petition within five months of being discharged from Chapter 7. The debt was a fine owed to the State, arising from a settlement of a potential consumer protection infraction. The State has a compelling interest in being able to enforce its judgments against lawbreakers, and permitting these fines to be discharged through bankruptcy diminishes the State's police power. Nevertheless, on balance, this Court believes that more of the factors count towards the determination of good faith than count against it. Stated differently, this Court finds that under the totality of all the circumstances in this particular case, the Plan is filed in good faith.

---

[3]Congress has never seen fit to amend the Bankruptcy Code to require that a Chapter 13 plan pay a specific minimum percentage on unsecured claims; and the case law holds that "good faith does not necessarily require substantial repayment of the unsecured claims." *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983). In 2005, this Court confirmed well over 200 Chapter 13 plans. Approximately one-half of these confirmed plans proposed to pay unsecured creditors less than 8.62% of total unsecured claims. Accordingly, the Debtor's proposed plan in this case is by no means paying an unusually low dividend to unsecured creditors.

[4]The Debtor disclosed in his Response to State's Brief that he has cancer. [Docket No. 22].

The State cites several cases that it argues govern in the present case. Although these cases have similar facts, all are distinguishable from the case at bar. The debtor in *In re Altmann* stole $121,000 from his sick and grieving grandmother, behavior which caused his judgment from the Chancery Court. *In re Altmann*, 256 B.R. 468 (Bankr. S.D. Miss. 2000). The debtor in *In re Bush* did not include the entirety of his disposable income towards his Chapter 13 plan. *In re Bush*, 120 B.R. 403 (Bankr. E.D. Tex. 1990). The debtor in *In re Sellers* improperly converted the creditor's collateral, and then concealed this conversion in a separate case. *In re Sellers*, 285 B.R. 769 (Bankr. S.D. Ga. 2001). In all of these cases, the debtors were attempting to discharge a debt that could not be discharged under Chapter 7; and in all of these cases, the debtors acted in a way that demonstrated unacceptable conduct *besides* attempting to discharge a nondischargeable-in-Chapter-7 judgment in Chapter 13.

In the present case, the Debtor has exhibited no improper behavior toward this Court or the State. He has not hidden any of his assets or falsely reported his income. He admitted to no wrongdoing in his Settlement with the State. He is proposing to pay the entirety of his surplus income. He has not violated his Settlement with the State.[5] In none of these ways has the Debtor exhibited bad faith.

It is worth noting that the Debtor, because he filed the Chapter 13 <u>before</u> the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) amendments went into effect on October 17, 2005, is eligible to be in a Chapter 13 despite having received a discharge in a Chapter 7 only five months prior to the filing of his Chapter 13 petition. If he had filed his petition on or

---

[5] In the Settlement between the Debtor and the State, the parties explicitly stipulate that the Debtor will not contest an objection to discharge under Chapters 7 and 11, but there is no mention of Chapter 13. This Court wonders why the State omitted Chapter 13 from the Settlement. Its absence undermines the State's position in this matter.

after October 17, 2005, this Court's ruling would be different, although only for timing reasons. Under BAPCPA, a debtor must wait four years after receiving a Chapter 7 discharge before becoming eligible for a discharge under Chapter 13. 11 U.S.C. § 1328(f). The Debtor in the present case waited only five months after his Chapter 7 discharge before filing under Chapter 13, which would not be permitted under BAPCPA.

More significant is the change that did <u>not</u> occur. In addition to adding the four year waiting period, BAPCPA also narrowed the "super-discharge" provision of § 1328(a) by adding several exceptions to discharge, including most of the paragraphs under § 523(a). Notably, the new § 1328(a) still does <u>not</u> include § 523(a)(7), which excepts a discharge for a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [which] is not compensation for actual pecuniary loss." 11 § U.S.C. 523(a)(7). By adding paragraphs (1)(B), (1)(C), (2), (3), and (4) of § 523(a) to the previous exceptions of paragraphs (5), (8), and (9), but not adding paragraph (7), Congress clearly intended to permit discharges of fines such as the Debtor's. Under BAPCPA, the Debtor would still be permitted to discharge this debt under Chapter 13, provided he waited long enough after his Chapter 7 discharge to file under Chapter 13.

## IV.  CONCLUSION

The Debtor's Plan proposes to pay his unsecured creditors his complete surplus income for the next three years. He will be paying 8.62% of the debt owed to the State, which is a much higher percentage than many approved plans. He has not made any misrepresentation in his case to the Court. He is simply taking appropriate advantage of the Bankruptcy Code as it stood prior to BAPCPA. Under these circumstances, the Debtor has exhibited good faith in proposing the Plan.

While it may seem contrary to the public policy of a governmental entity being able to enforce the laws and procedures by fining wrongdoers, Congress has established Chapter 13 bankruptcy protection to promote the public policy of allowing honest citizens to regain their financial footing. In deciding between these conflicting public policies, this Court must choose the one expressly provided by the Bankruptcy Code; the "super-discharge" provision simply has not been narrowed to prevent discharge of governmental fines. Accordingly, the State of Texas' Objection to Confirmation is overruled.[6]

An order overruling the State of Texas' Objection to Confirmation will be entered on the docket simultaneously with this Memorandum Opinion.

SIGNED this the 3rd day of May, 2006.

JEFF BOHM
UNITED STATES BANKRUPTCY JUDGE

---

[6]After all oral arguments and briefs were completed in the case at bar, this Court issued a Memorandum Opinion on another issue in a different Chapter 13 case that may affect the case at bar. Specifically, on March 23, 2006, this Court issued a Memorandum Opinion holding that direct payments by a debtor to creditors are the exception, not the rule, in Chapter 13 cases, and that the Debtor must satisfy the various elements as established by case law to obtain approval for direct payments. Otherwise, all payments must be made through the Trustee. *In re Perez*, 339 B.R. 385 (Bankr. S.D. Tex. 2006). In the case at bar, the Debtor's First Amended Plan proposes to allow the Debtor to make direct payments to the holder of the lien on the Debtor's homestead. This, the Court will not allow without the Debtor filing a separate motion seeking approval and satisfying the elements discussed in *Perez*. The Chapter 13 Trustee, the State of Texas, and any other creditor all have standing to object to such relief if they so desire. The Court's decision today is limited to holding that the Court will not deny confirmation on the grounds articulated by the State of Texas in its Objection. This Court will afford the Debtor the opportunity of prosecuting a motion requesting approval for direct payment, but only if such motion is filed on or before May 15, 2006. If the Debtor fails to file such a motion by this date, then this Court will deny confirmation of the First Amended Plan for failure to comply with this Court's ruling in *Perez*. Conversely, if the Debtor timely files such a motion, this Court will schedule a hearing, at which time testimony must be adduced and exhibits may be introduced. If the Court grants the motion, then it will confirm the Plan. If the Court denies the Motion, then the Plan will not be confirmed.

cc:     (1)     Lester R. Buzbee, III
                via tele copy (281) 540-8060

        (2)     Ashley F. Bartram
                via tele copy (512) 482-8341